# Syllabus

Chief Justice:

Elizabeth T. Clement

Justices:

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

Reporter of Decisions:
Kathryn L. Loomis

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

STEGALL v RESOURCE TECHNOLOGY CORPORATION

Docket No. 165450. Argued on application for leave to appeal April 17, 2024. Decided July 22, 2024.

Cleveland Stegall brought an action in the Oakland Circuit Court against Resource Technology Corporation, doing business as Brightwing, and FCA US, LLC, alleging that his employment had been terminated in violation of both public policy and the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq.* Plaintiff had been hired to work at an FCA vehicle assembly plant in 2013 through Brightwing, a staffing agency. In late 2015, FCA announced its plans to eliminate plaintiff's shift at the plant the following summer, but plaintiff claimed he was led to believe that he and the other employees would be offered jobs at another plant. In April 2016, plaintiff raised concerns about asbestos in the workplace to one of his FCA supervisors. According to plaintiff, the supervisors indicated that they would conduct air quality tests and provide plaintiff with the results. Through the months of May and June, plaintiff made periodic requests for the air quality test results but did not receive them. Plaintiff sent another communication to his supervisors about not receiving the results of the air quality tests and threatened to file complaints with the federal Occupational Safety and Health Administration and the Michigan Occupational Safety and Health Administration (the Michigan OSHA). Plaintiff was terminated on June 17, 2016, and he was instructed that his employment ended effective the day that FCA ceased operations on his second shift. On July 6, 2016, plaintiff filed a discrimination complaint with the Michigan OSHA, naming defendants in the complaint. Thereafter, plaintiff brought this action, claiming that his employment had been terminated by defendants in retaliation for his failure or refusal to violate the law and for exercising a right conferred by well-established legislative enactment, including occupational safety laws. Plaintiff later withdrew his WPA claim against FCA. Defendants separately moved for summary disposition pursuant to MCR 2.116(C)(10). The trial court, Martha D. Anderson, J., granted summary disposition for both defendants, ruling that defendants had not violated the law, that plaintiff's public-policy claim was preempted by the WPA, and that a public-policy claim could not be maintained on the basis of internal complaints. Plaintiff appealed, and the Court of Appeals, JANSEN, P.J., and METER, J. (GLEICHER, J., dissenting), affirmed the circuit court's decision in an unpublished per curiam opinion. Plaintiff applied for leave to appeal in the Supreme Court, and the Supreme Court ordered that oral argument be heard on the application. 508 Mich 986 (2021). Following oral argument, the Supreme Court reversed the part the Court of Appeals judgment holding that a public-policy claim could not be based on retaliation for internal reporting, remanded to the Court of Appeals

for further consideration of plaintiff's public-policy claim, and denied leave in all other respects. 509 Mich 1086 (2022). On remand, the Court of Appeals, JANSEN, P.J., and BORRELLO, J. (GLEICHER, C.J., dissenting), concluded that summary disposition in favor of defendants was appropriate because plaintiff's public-policy claim was preempted by the Occupational Safety and Health Act (OSHA), 29 USC 651 *et seq*., and the Michigan Occupational Safety and Health Act (MiOSHA), MCL 408.1001 *et seq*. 345 Mich App 416 (2023). The majority acknowledged that under *Suchodolski v Mich Consol Gas Co*, 412 Mich 692 (1982), which set forth a public-policy exception to the rule that an at-will employment contract may be terminated at any time for any reason, there was an implied prohibition on retaliatory discharges when the reason for a discharge was the employee's exercise of a right conferred by a well-established legislative enactment. However, *Dudewicz v Norris Schmid, Inc*, 443 Mich 68 (1993), overruled in part on other grounds by *Brown v Detroit Mayor*, 478 Mich 589 (2007), subsequently held that a public-policy claim is sustainable only if there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue. Relying on *Dudewicz*, the majority concluded that because both OSHA and MiOSHA included an antiretaliation provision, that remedy was exclusive and, therefore, plaintiff's public-policy claim was preempted. Plaintiff again sought leave to appeal in the Supreme Court, which ordered oral argument on the application and directed the parties to address (1) whether a public-policy claim for retaliation based on a statute that has an antiretaliation provision still exists under *Suchodolski* after the Court's decision in *Dudewicz*, and (2) whether the Court of Appeals correctly held that plaintiff's public-policy claim was preempted by OSHA and MiOSHA or whether the claim was not preempted because the remedy provided by the statutes was inadequate. 513 Mich 885 (2023).

In an opinion by Justice BOLDEN, joined by Justices BERNSTEIN, CAVANAGH, and WELCH, the Supreme Court *held*:

Generally, a cause of action based on a discharge in violation of public policy is predicated on a failure or refusal to violate a law or on the exercise of a right conferred by a well-established legislative enactment. Such a claim may be asserted despite the applicability of a statute that has an antiretaliation provision only where the remedies in the subject statute are cumulative and not exclusive. The remedies provided under OSHA and MiOSHA are inadequate to constitute exclusive remedies that preempt public-policy claims because they fail to provide employees with sufficient redress. Given that the remedies under OSHA and MiOSHA are therefore cumulative, plaintiff's public-policy cause of action was not preempted. The case was remanded to the trial court to consider whether there is a genuine issue of material fact as to plaintiff's claim that he was discharged in violation of public policy.

1. As a general rule, an employee subject to an at-will employment contract may be terminated at any time for any reason. However, an exception to that rule was recognized in *Suchodolski* based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable. In particular, courts may imply a public-policy cause of action for wrongful termination for the failure or refusal to violate a law and for the exercise of a right conferred by a well-established legislative enactment. In *Dudewicz*, however, the Supreme Court held that a public-policy claim is sustainable only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue. While this holding, read in isolation, seemingly invalidated a public-policy cause of action where the underlying statute has

an antiretaliation provision, when read in the proper context, *Dudewicz* limits the public-policy exception to the at-will employment rule only where a legislative enactment has not only explicitly prohibited the discharge of an employee acting in accordance with a statutory right or duty, but also provided an exclusive remedy for violation of that explicit prohibition. In other words, when examining whether a public-policy claim based on alleged retaliatory action by the employer may be asserted, the threshold inquiry is whether the public-policy claim is based on a statute that has an antiretaliation provision. If so, the court must then ask whether the remedies of the underlying statute are exclusive. If deemed exclusive, the public-policy claim is preempted. But if the remedies are cumulative, the public-policy claim may proceed.

2. Generally, where a statute creates a new right or imposes a new duty not previously recognized under the common law, the remedies provided in the statute are presumed exclusive unless the remedies are plainly inadequate or there is a clear contrary intent. The Supreme Court noted this rule in *Pompey v Gen Motors Corp*, 385 Mich 537 (1971). Although *Lash v Traverse City*, 479 Mich 180, 192 n 19 (2007), subsequently characterized this passage from *Pompey* as dictum that appeared to be inconsistent with subsequent caselaw, the cases *Lash* cited to support this characterization did not themselves address the need for statutory remedies to be adequate because, in each case, there was an existing legal framework that foreclosed any remedies outside of the statutes at issue. Accordingly, there were particular reasons for the Court to have refrained from assessing the adequacy of the statutory remedies. The same could not be said in this case because OSHA and MiOSHA did not present the same obstacles. Moreover, contrary to defendants' assertion, the "plainly inadequate" qualifier has been cited by Michigan's appellate courts since *Pompey*. Thus, the "plainly inadequate" qualifier is consistent with Michigan jurisprudence, and courts must therefore conduct an inquiry into the adequacy of the remedy when addressing whether statutory remedies are exclusive or cumulative. *Lash* was disavowed to the extent that it disavowed *Pompey*'s adequacy analysis as dictum.

3. MiOSHA's antiretaliation provision, MCL 408.1065(1), states that a person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under or regulated by MiOSHA or has testified or is about to testify in such a proceeding or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by the act. This language is almost identical with that found in OSHA. Under MCL 408.1065(2), if an employee has reason to believe their employment was terminated in retaliation for reporting alleged violations of MiOSHA, or otherwise caused their employer to be investigated for alleged violations, the employee only has 30 days to file a complaint with the Department of Labor and Economic Opportunity, which can initiate an investigation against the employer as it deems appropriate. Notably, MCL 408.1065(2) provides the department with great discretion to decide which complaints are meritorious, whether to investigate a complaint, and what remedies, if any, an employee is entitled to. It does not provide an employee with a private a cause of action. In this case, the department took no action on plaintiff's behalf, and under the current language of MiOSHA, without the availability of a public-policy claim, plaintiff could not seek redress for his allegedly wrongful termination. Thus, the remedies provided in OSHA and MiOSHA are plainly inadequate to provide a plaintiff with sufficient redress, as other jurisdictions have persuasively concluded with respect to OSHA. The 30-day limitation, the unfettered discretion granted to the department, and the employee's lack of control over what occurs after a complaint has been filed

collectively provide sufficient reason to conclude that the remedies in OSHA and MiOSHA were plainly inadequate. Therefore, the remedies provided were merely cumulative and not exclusive and, accordingly, parties challenging their discharge as a matter of public policy are not restricted from doing so under *Dudewicz*.

Court of Appeals judgment reversed; case remanded to the Oakland Circuit Court for further proceedings.

Justice ZAHRA, joined by Chief Justice CLEMENT and Justice VIVIANO, dissenting, would have affirmed the Court of Appeals. He noted that the majority opinion passed too lightly over the fact that defendant FCA had closed the auto plant at which plaintiff worked before his employment was terminated. He also disagreed with the majority's decision to revive the rule from *Pompey* that a statutory remedy is not deemed exclusive if such remedy is plainly inadequate, which *Pompey* stated in dictum, without analysis, and without Michigan authority. He would have held that, as established in *Dudewicz*, plaintiff's public-policy claim was preempted because the underlying, applicable federal and state laws—OSHA and MiOSHA—contain antiretaliation provisions. Further, he would have held that plaintiff failed to establish that he fell within either of the two narrow exceptions to *Suchodolski* that plaintiff claimed were applicable. Specifically, by raising questions about workplace safety and being reluctant to work in certain areas of the plant without air quality tests, an inspection, and personal protective equipment, plaintiff himself did not fail or refuse to violate workplace-safety laws, whose duties were directed at his employer, not him. Plaintiff also did not establish that his employment was terminated because he had exercised his right to an asbestos-free workplace, which was conferred by well-established legislative enactments. Plaintiff's concerns about asbestos were investigated and found to be without merit by the plant's health and safety manager, an asbestos specialist, and the Michigan Occupational Safety and Health Administration. Even if plaintiff had made out a prima facie case of wrongful termination under *McDonnell Douglas Corp v Green*, 411 US 792 (1973), he would not have been able to establish that FCA's proffered reason for terminating plaintiff's employment—namely, the fact that FCA ceased production and closed down the plant where plaintiff worked—was merely a pretext. Accordingly, plaintiff was properly terminated from employment as an at-will employee, and defendants were entitled to summary disposition of plaintiff's public-policy claim.

# OPINION

Chief Justice:
   Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 22, 2024

STATE OF MICHIGAN

SUPREME COURT

CLEVELAND STEGALL,

     Plaintiff-Appellant,

v                                 No. 165450

RESOURCE TECHNOLOGY
CORPORATION, doing business as
BRIGHTWING, and FCA US, LLC,

     Defendants-Appellees.

_____

BEFORE THE ENTIRE BENCH

BOLDEN, J.

In this case, we consider whether a public-policy cause of action for retaliatory discharge may be asserted even where applicable statutes like the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*., the Occupational Safety and Health Act (OSHA), 29 USC 651 *et seq*., and the Michigan Occupational Safety and Health Act (MiOSHA), MCL 408.1001 *et seq*., already have antiretaliation provisions and associated

remedies. The lower courts concluded that plaintiff's claims were precluded by the WPA, OSHA, and MiOSHA. We disagree. We reverse the judgment of the Court of Appeals and remand to the trial court for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff, Cleveland Stegall, began working at defendant FCA US, LLC's Sterling Heights Assembly Plant through a staffing agency, defendant Resource Technology Corporation, doing business as Brightwing, in August 2013. Plaintiff worked in information technology systems and primarily worked during the second shift at the plant. In late 2015, FCA announced its plans to eliminate plaintiff's shift at the plant, effective summer 2016. Despite the plan to eliminate the shift, plaintiff contends he was led to believe that he and the other employees would be offered jobs at another plant.

In April 2016, plaintiff raised concerns to his FCA supervisors about possible asbestos in the workplace. Plaintiff e-mailed photographs of the suspected asbestos to his immediate supervisor. According to plaintiff, the supervisors indicated that they would conduct air quality tests and provide plaintiff with the results once they became available. Employees were instructed not to work in the concerning areas until the air quality tests were conducted. Personal protective equipment was also distributed. Through the months of May and June, plaintiff made periodic requests for the air quality test results but did not receive them. Plaintiff sent another communication to his supervisors to complain about not receiving the results of the air quality tests and threatened to file complaints with the federal Occupational Safety and Health Administration and the Michigan Occupational Safety and Health Administration (the Michigan OSHA). Defendant's employment was

terminated on June 17, 2016. Although the parties dispute the basis for plaintiff's termination, he was instructed that his employment ended effective the day that FCA ceased operations on his second shift.[1]

The next day, plaintiff informed an account manager at Brightwing that FCA had terminated his employment and that he had previously expressed concerns about asbestos to FCA supervisors. Plaintiff testified that the account manager made note of this conversation and reassured plaintiff that she would assist in finding plaintiff other opportunities. Then, on July 6, 2016, plaintiff filed a discrimination complaint with the Michigan OSHA, naming defendants in the complaint.[2] Subsequently, Brightwing twice sent plaintiff an "Offboarding Survey," and Brightwing's 401(k) provider sent plaintiff a letter indicating that his "former employer" had closed his 401(k) account.

Thereafter, plaintiff filed a lawsuit against defendants, claiming retaliatory termination under the WPA[3] and termination in violation of public policy. Specifically,

---

[1] Given that plaintiff's lawsuit claims wrongful termination, this factual dispute gets directly to the merits of the case plaintiff would like to prove. We take no position on those merits. The purpose of this opinion, rather, is to decide the threshold question of whether plaintiff's claim is barred before those merits can even be considered.

[2] A complaint with the Michigan OSHA is not a lawsuit, but an opportunity for the Michigan OSHA's Employee Discrimination Section to review a claimant's complaint. See Michigan Department of Labor and Economic Opportunity, *Employee Discrimination Section* <https://www.michigan.gov/leo/bureaus-agencies/miosha/divisions/general-industry-safety-and-health-division/emp-discrim> (accessed June 14, 2024) [https://perma.cc/3WAC-XMDT].

[3] This appeal only involves plaintiff's public-policy claim, so we will not address plaintiff's WPA cause of action. Briefly, plaintiff stipulated the dismissal of his WPA claim against FCA in the trial court. As against Brightwing, the trial court granted Brightwing's motion for summary disposition on the WPA claim, the Court of Appeals affirmed, and we denied leave to appeal on that issue. See *Stegall v Resource Technology Corp*, unpublished per

plaintiff alleged that defendants had terminated his employment in retaliation for his failure or refusal to violate the law and for exercising a right conferred by well-established legislative enactment—including occupational safety laws. Defendants separately moved for summary disposition pursuant to MCR 2.116(C)(10). The trial court granted both motions.

Initially, the trial court found that the record did not support a conclusion that defendants violated the law. The trial court also concluded that plaintiff's public-policy claim was preempted by the WPA because the remedies provided in the act were exclusive and not cumulative. And regardless, the trial court continued, a public-policy claim could not be maintained on the basis of internal complaints. The Court of Appeals majority affirmed. *Stegall v Resource Technology Corp*, unpublished per curiam opinion of the Court of Appeals, issued September 24, 2019 (Docket No. 341197) (*Stegall I*). The majority agreed that there was no evidence defendants had actually violated the law. *Id*. at 3. Moreover, plaintiff's public-policy claim was without support regardless of whether it was preempted by the WPA because the public-policy exception does not extend to "discharges in retaliation for internal reporting of alleged violations of the law . . . ." *Id*. Accordingly, the majority did not decide whether plaintiff's public-policy claim was preempted by the WPA. *Id*.

The Court of Appeals dissent took the view that a public-policy cause of action may be based on internal reporting and that plaintiff had "set forth a prima facie case under a public policy tort theory." *Stegall I*, unpub op at 7-8 (GLEICHER, J., dissenting). Judge

_____

curiam opinion of the Court of Appeals, issued September 24, 2019 (Docket No. 341197) (*Stegall I*); *Stegall v Resource Technology Corp*, 509 Mich 1086, 1088 (2022) (*Stegall II*).

4

GLEICHER noted that "[w]hether a law was actually broken is irrelevant to an action based on a public policy theory." *Id*. at 6.

We heard oral argument on plaintiff's application for leave to appeal. In an order, we held that the Court of Appeals erred by failing to address whether plaintiff's public-policy claim was preempted by the WPA and by concluding that the public-policy exception does not extend to retaliation for internal reporting. *Stegall v Resource Technology Corp*, 509 Mich 1086, 1086-1087 (2022) (*Stegall II*). Specifically, we noted that courts have previously recognized a public-policy claim based on internal reporting and that, regardless, limiting public-policy claims to external reports would not "serve the welfare of the people of Michigan . . . ." *Id*. at 1087.

Finally, we noted that defendants' arguments that plaintiff's public-policy claim was preempted by other state and federal laws, including OSHA and MiOSHA, "were raised for the very first time in this Court and were thus never addressed by the Court of Appeals." *Id*. at 1087 n 1. Accordingly, we reversed the judgment in part and remanded to the Court of Appeals "for further consideration of whether plaintiff has established a prima facie claim that he was discharged in violation of public policy, whether plaintiff's public-policy claim is nonetheless preempted by either state or federal law, and whether arguments that the claim has been preempted are preserved." *Id*. at 1087. We denied leave to appeal in all other respects. *Id*. at 1088.

On remand, the Court of Appeals majority held that, although preemption arguments were raised for the first time in this Court and not preserved for appellate review, it could consider the issue. *Stegall v Resource Technology Corp (On Remand)*, 345 Mich App 416, 426; 5 NW3d 378 (2023) (*Stegall III*). The majority concluded that summary disposition

5

in favor of defendants was appropriate on the basis that the public-policy claim was preempted by OSHA and MiOSHA. *Id*. at 426-430.

The majority acknowledged that under *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 695-696; 316 NW2d 710 (1982), " 'the courts have found implied a prohibition on retaliatory discharges when the reason for a discharge was the employee's exercise of a right conferred by a well-established legislative enactment.' " *Stegall III*, 345 Mich App at 427, quoting *Suchodolski*, 412 Mich at 695-696. The Court then noted that under *Dudewicz v Norris Schmid, Inc*, 443 Mich 68; 503 NW2d 645 (1993), overruled in part on other grounds by *Brown v Detroit Mayor*, 478 Mich 589, 594 n 2 (2007), " '[a] public policy claim is sustainable . . . only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue.' " *Stegall III*, 345 Mich App at 428, quoting *Dudewicz*, 443 Mich at 80.

The majority rejected plaintiff's argument that under *Pompey v Gen Motors Corp*, 385 Mich 537, 552 n 14; 189 NW2d 243 (1971), a "statutory remedy is not deemed exclusive if such remedy is plainly inadequate." Citing *Lash v Traverse City*, 479 Mich 180, 192 n 19; 735 NW2d 628 (2007), the majority concluded that the statement in *Pompey* regarding adequacy was dictum and therefore no adequacy analysis was required. *Stegall III*, 345 Mich App at 430-431. Relying on *Dudewicz*, the majority concluded that because OSHA and MiOSHA included an antiretaliation provision, that remedy was exclusive and, therefore, plaintiff's public-policy claim was preempted. *Stegall III*, 345 Mich App at 430.

The dissent opined on remand that the unpreserved issue of preemption under OSHA and MiOSHA should not be considered but that nonetheless the claim was not preempted. *Stegall III*, 345 Mich App at 435-446 (GLEICHER, C.J., dissenting). Chief

6

Judge GLEICHER noted that the majority's interpretation of *Dudewicz* would present this Court with the opportunity to clarify the holdings of these two important cases. According to Chief Judge GLEICHER, "[w]hile *Suchodolski* decreed that a statute *must* supply the source of a public policy to sustain a public-policy tort claim, *Dudewicz* erased from this decree every statute prohibiting discharge in retaliation for the conduct at issue." *Id*. at 436. Taking issue with the lack of available remedies in actions like this one, Chief Judge GLEICHER believed the majority's interpretation of *Dudewicz* swept too broadly and left plaintiff without a remedy. *Id*. at 446.

Plaintiff again sought leave to appeal in this Court, and we ordered oral argument on the application, directing the parties to address:

> (1) whether a public-policy claim for retaliation based upon a statute that has an antiretaliation provision still exists under [*Suchodolski*, 412 Mich at 695 & n 2], after this Court's decision in *Dudewicz*; and (2) whether the Court of Appeals correctly held that the plaintiff's public-policy claim was preempted by [OSHA and MiOSHA] or whether the claim was not preempted because the remedy provided by the statutes is inadequate. [*Stegall v Resource Technology Corp*, 513 Mich 885, 885 (2023) (citation omitted).]

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Id*. at 120. When deciding a motion for summary disposition under MCR 2.116(C)(10), "a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Id*.

7

Moreover, "[t]he questions presented in these appeals are questions of law that we review de novo." *Velez v Tuma*, 492 Mich 1, 11; 821 NW2d 432 (2012). De novo review means that this Court independently reviews the issue and does not defer to the lower court's determination. *People v Posey*, 512 Mich 317, 332; 1 NW3d 101 (2023) (opinion by BOLDEN, J.), citing *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018).

## B. PUBLIC-POLICY TORT CLAIM

The question presented here is whether a public-policy cause of action may be asserted even though an applicable statute has an antiretaliation provision and associated remedies. We conclude that in this circumstance, a public-policy cause of action may be asserted.

As a general rule, an employee subject to an at-will employment contract may be terminated at any time for any reason. *Suchodolski*, 412 Mich at 694-695. "However, an exception has been recognized to that rule, based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Id*. at 695. Evidence of this public policy is "[m]ost often . . . found in explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty." *Id*. In *Suchodolski*, we reaffirmed that in addition to a statutory cause of action, courts may imply a public-policy cause of action for wrongful termination for (1) the "failure or refusal to violate a law" and for (2) the "exercise of a right conferred by a well-established legislative enactment." *Id*. at 695-696.

In *Dudewicz*, 443 Mich at 79, however, this Court held that "[a] public policy claim is sustainable . . . only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue." Understandably, following that decision,

8

confusion arose surrounding the continued viability of public-policy causes of action in circumstances where a statute has an antiretaliation provision. See *McNeil v Charlevoix Co*, 484 Mich 69, 88-92 n 5; 772 NW2d 18 (2009) (CAVANAGH, J., concurring); *Stegall III*, 345 Mich App at 435-446 (GLEICHER, C.J., dissenting). A close examination of *Dudewicz*, therefore, is helpful in assessing the effect it had on this Court's holding in *Suchodolski*.

In *Dudewicz*, the plaintiff asserted two claims against his employer for retaliatory discharge—a claim under the WPA and a public-policy cause of action. *Dudewicz*, 443 Mich at 72. The plaintiff alleged that his employer fired him after he failed to heed his employer's threat that he would be fired if he did not drop criminal charges against his coworker for assault and battery. *Id*. at 71. The trial court granted a directed verdict against the plaintiff because the trial court concluded that the WPA did not protect employees who "are fired for reporting violations of the law by fellow employees." *Id*. at 74. We held that the trial court erred because the WPA does protect such conduct and thus the WPA was applicable. *Id*. at 78. We then considered whether the plaintiff could assert a public-policy claim based on this statute. *Id*.

As a threshold matter, we examined whether the remedies provided in the WPA are exclusive.[4] *Id*. We recognized that, generally, "the remedies provided by statute for

---

[4] We note that *Suchodolski* did not engage in this threshold inquiry because the sources of public policy that the plaintiff invoked did not appear to include an antiretaliation provision. *Suchodolski*, 412 Mich at 696 (relying on a professional organization's code of ethics and general regulations of the Public Service Commission). Considering that the WPA has such a provision, *Dudewicz* invoked our longstanding caselaw in *Pompey*, 385 Mich at 552, when analyzing whether a public-policy claim may be maintained despite the statute. *Dudewicz*, 443 Mich at 78.

violation of a right having no common-law counterpart are exclusive, not cumulative." *Id.*, citing *Pompey*, 385 Mich at 552. We held that the WPA recognized a new right not previously found under our common law and that therefore the remedies provided in the WPA are exclusive. *Dudewicz*, 443 Mich at 78-79.

With that determination, we then proceeded to discuss whether, under *Suchodolski*, the plaintiff was permitted to assert his public-policy claim. *Id*. at 79. As noted, we held that a public-policy cause of action "is sustainable . . . only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue. As a result, because the WPA provides relief to [the plaintiff] for reporting his fellow employee's illegal activity, his public policy claim is not sustainable." *Id*. at 80. Read in isolation, this excerpt seemingly invalidated a public-policy cause of action where the underlying statute has an antiretaliation provision. However, this reading misconstrues *Dudewicz* because it disregards our threshold analysis of the remedies provided in the WPA.

Read in the proper context, *Dudewicz* limits the "public-policy exception to the at-will employment rule only where a legislative enactment has not only explicitly prohibited the discharge of an employee acting in accordance with a statutory right or duty, but also provided an exclusive remedy for violation of that explicit prohibition." *McNeil*, 484 Mich at 90 n 5 (CAVANAGH, J., concurring). In other words, when examining whether a public-policy claim based on alleged retaliatory action by the employer may be asserted, the threshold inquiry is whether the public-policy claim is based on a statute that has an antiretaliation provision. If so, the court must then ask whether the remedies of the

10

underlying statute are exclusive. If deemed exclusive, the public-policy claim is preempted. But if the remedies are cumulative, the public-policy claim may proceed.

## C. EXCLUSIVITY

We next consider whether plaintiff's public-policy claim may be sustained even though OSHA and MiOSHA have antiretaliation provisions.

### 1. LEGAL BACKGROUND

Generally, where a statute creates a new right or imposes a new duty not previously recognized under the common law, the remedies provided in the statute are presumed exclusive unless the remedies are plainly inadequate or there is a clear contrary intent. *Pompey*, 385 Mich at 552, 553 n 14.[5] Plaintiff argues that the remedies provided under OSHA and MiOSHA are not exclusive because they are plainly inadequate. Defendants, on the other hand, argue that the qualifier relating to the adequacy of the available statutory remedies was raised only in dicta in *Pompey*, has since not been cited, and appears inconsistent with Michigan jurisprudence.

Defendants cite *Lash*, 479 Mich at 192 n 19, as evidence that our caselaw rejected the adequacy qualifier recognized in *Pompey*, 385 Mich at 553 n 14. Specifically, in

---

[5] We assume without deciding that OSHA and MiOSHA created a new right or imposed a new duty not previously recognized under the common law. Plaintiff and defendants agree that OSHA and MiOSHA created such a new right. However, there appears to be a conflict in the caselaw on this matter. See *Atlas Roofing Co, Inc v Occupational Safety & Health Review Comm*, 430 US 442, 445; 97 S Ct 1261; 51 L Ed 2d 464 (1977) ("[OSHA] created a new statutory duty to avoid maintaining unsafe or unhealthy working conditions, and empowers the Secretary of Labor to promulgate health and safety standards."); *Ohlsen v DST Indus, Inc*, 111 Mich App 580, 583-584; 314 NW2d 699 (1981) (holding that the remedies provided in MiOSHA are exclusive); and *Hottmann v Hottmann*, 226 Mich App 171, 177; 572 NW2d 259 (1997) ("The MIOSHA does not create new common-law or statutory rights, duties, or liabilities of employers and employees.").

*Pompey*, we stated: "There are two important qualifications to this rule of statutory construction: In the absence of a pre-existent common-law remedy, the statutory remedy is not deemed exclusive if such remedy is plainly inadequate, or unless a contrary intent clearly appears." *Id*. (citations omitted).

In *Lash*, the Court considered whether a plaintiff could bring a private cause of action against a governmental entity. *Lash*, 479 Mich at 194. In considering this issue, the Court discussed the *Pompey* qualifiers. *Id*. at 191-193. However, without affirmatively engaging in the adequacy issue, we held that "without express legislative authorization, a cause of action cannot be created in contravention of the broad scope of governmental immunity." *Id*. at 194 (quotation marks and citations omitted). Thus, the outcome of *Lash* turned on the issue of governmental immunity. *Id*.

Nonetheless, we questioned the *Pompey* adequacy-qualifier footnote, noting:

We need not address the dictum in the *Pompey* footnote that some quantum of additional remedy is permitted where a statutory remedy is "plainly inadequate." We do note that this principle, which has never since been cited in any majority opinion of this Court, appears inconsistent with subsequent caselaw." [*Id*. at 192 n 19.]

In support of this proposition, we cited two cases: *White v Chrysler Corp*, 421 Mich 192, 199; 364 NW2d 619 (1984), and *Grand Traverse Co v Michigan*, 450 Mich 457, 468; 538 NW2d 1 (1995). In *White*, the Court held that the plaintiff could not sustain a tort claim against his employer for failure to provide a safe work environment because "as a trade-off for the obligation to secure the payment of workers' compensation benefits, [an employer] is relieved of tort liability under the provision of the workers' compensation act that makes a claim for workers' compensation the injured worker's exclusive remedy

12

against the employer." *White*, 421 Mich at 199. Similarly, in *Grand Traverse Co*, the Court held that there were no additional remedies outside of those provided in the subject statute because the underlying statute specifically precluded it. *Grand Traverse Co*, 450 Mich at 468. Therefore, the Court did not need to determine whether the remedies provided were adequate or not, considering the explicit language of the statute. *Id*. The Court recognized that although "there are times when we may imply a cause of action, a plain reading of this statute precludes that analysis in this case." *Id*. at 468.

In sum, the adequacy qualifier was not addressed in *Lash*, *White*, or *Grand Traverse Co* because there was an existing legal framework that foreclosed any remedies outside of the statute. In *Lash*, 479 Mich at 194, a private cause of action was not permitted because the case involved governmental immunity, which prohibits a private cause of action against a government official absent an explicit legislative directive. In *White*, 421 Mich at 199, a private cause of action was not permitted because the legislative framework of the worker's compensation act is such that in exchange for receiving compensation for injuries, there is no tort cause of action. Finally, in *Grand Traverse Co*, 450 Mich at 468, the subject statute explicitly prohibited a private cause of action. Thus, in each of these cases, there was a particular reason for the Court to have refrained from assessing the adequacy of the statutory remedies.[6] The same cannot be said in this case because OSHA and MiOSHA do not present the same obstacles.

---

[6] Both the dissent and this Court in *Lash* characterized the *Pompey* adequacy footnote as dictum. We question that characterization. See *Detroit v Pub Utilities Comm'*, 288 Mich 267, 300; 286 NW 368 (1939). Moreover, if the *Pompey* footnote is nonbinding dictum, the *Lash* footnote questioning it is also necessarily nonbinding dictum. In any event, as explained, the *Pompey* footnote holds no "remarkable contention." It has long been held

13

Moreover, contrary to defendants' assertion, the adequacy qualifier has been cited since *Pompey*. See *Lamphere Sch v Lamphere Federation of Teachers*, 400 Mich 104, 129; 252 NW2d 818 (1977) ("As the common law affords no basis for the school district's liability and remedy theories, plaintiff is thus limited to the statutory remedy, provided that remedy is adequate."); *Int'l Brotherhood of Electrical Workers, Local Union No 58 v McNulty*, 214 Mich App 437, 445; 543 NW2d 25 (1995) ("As a general rule, the remedies provided by statute for violation of a right having no common-law counterpart are exclusive. However, an exception to this general rule provides that if the statutory remedy is plainly inadequate, a private cause of action can be inferred.") (citation omitted); *Forster v Delton Sch Dist*, 176 Mich App 582, 585; 440 NW2d 421 (1989) ("[A] private cause of action must be dismissed under a statute creating a new right or imposing a new duty unless the private cause of action was expressly created by the act or inferred from the fact that the act provides no adequate means of enforcement of its provisions."). Accordingly, we take this opportunity to reaffirm the aforementioned caselaw and hold that the "plainly inadequate" qualifier is consistent with Michigan jurisprudence and that courts must therefore conduct an inquiry into the adequacy of the remedy when addressing whether statutory remedies are exclusive or cumulative. Furthermore, we disavow *Lash* to the extent that it disavows *Pompey*'s adequacy analysis as dictum.

---

in this state that where the Legislature intends to protect a class, a member of that class may pursue an action asserting a violation of that statute. See, e.g., *Bolden v Grand Rapids Operating Corp*, 239 Mich 318, 326; 214 NW 241 (1927). And a right must have a meaningful remedy, or it is no right at all. *Bauserman v Unemployment Ins Agency*, 509 Mich 673, 691; 983 NW2d 855 (2022).

14

## 2. ADEQUACY OF OSHA'S AND MIOSHA'S REMEDIES

With this in mind, we take a closer look at the language of the statute. Adopting language almost identical with that found in OSHA,[7] MiOSHA's antiretaliation provision states:[8]

> A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under or regulated by this act or has testified or is about to testify in such a proceeding or because of

---

[7] OSHA's antiretaliation provision states:

> No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter. [29 USC 660(c)(1).]

With regard to an employer that is suspected of violating of this provision, OSHA provides, in part:

> Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary [of Labor] alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. [29 USC 660(c)(2).]

[8] Our caselaw indicates that OSHA and MiOSHA are treated similarly. See *Swartz v Dow Chem Co*, 414 Mich 433, 438 n 3; 326 NW2d 804 (1982) ("The Michigan act incorporates all federal standards which have been adopted or promulgated by the United States Department of Labor which were in effect at the time the act was adopted."); *People v Hegedus*, 432 Mich 598, 622; 443 NW2d 127 (1989) (explaining that because OSHA's purpose was partly to create minimum uniform stands in workplace safety, OSHA's state counterparts must be "at least as effective as the federal standards") (quotation marks omitted).

the exercise by the employee on behalf of himself or herself or others of a right afforded by this act. [MCL 408.1065(1).]

With respect to violations of this provision, the statute provides:

> An employee who believes that he or she was discharged or otherwise discriminated against by a person in violation of this section may file a complaint with the department of labor [now the Department of Labor and Economic Opportunity, which contains the Michigan OSHA; see Executive Reorganization Order No. 2019-3] alleging the discrimination within 30 days after the violation occurs. Upon receipt of the complaint, the department of labor shall cause an investigation to be made as it considers appropriate. If, upon the investigation, the department determines that this section was violated, the department shall order all appropriate relief, including rehiring or reinstatement of an employee to his or her former position with back pay. [MCL 408.1065(2).]

In other words, if an employee has reason to believe they were terminated in retaliation for reporting alleged violations of MiOSHA, or otherwise caused their employer to be investigated for alleged violations, the employee only has 30 days to file a complaint with the Department of Labor and Economic Opportunity. If the department believes that the employee's complaint is meritorious, the department can initiate an investigation against the employer as it deems appropriate. Notably, MCL 408.1065(2) provides the department with great discretion to decide which complaints are meritorious, whether to investigate a complaint, and what remedies, if any, an employee is entitled to. It also does not provide an employee with a private a cause of action.

Plaintiff argues that the remedies provided under MiOSHA are inadequate because the 30-day limitation, combined with the wide deference provided to the department in deciding which complaints to investigate, significantly limits an employee's ability to seek redress. Unlike statutes in which the enforcing body is required to either take action or put the ball back in the employee's hands to pursue their own remedy, sole discretion to pursue

16

a claim lies with the department. Plaintiff emphasizes that in this case, no action was taken by the department on his behalf, and under the current language of MiOSHA, without the availability of a public-policy claim, plaintiff cannot seek redress for his allegedly wrongful termination. Defendants, relying on *Lash* and the Court of Appeals' interpretation of *Dudewicz*, argue that adequacy is not a consideration. Furthermore, even if an adequacy analysis was done, the fact that the remedies provided were not considered and not further investigated does not mean that he was not afforded a remedy by the statute.

We agree with plaintiff that the adequacy of available statutory remedies is a relevant consideration. We are not alone in having to resolve this issue, as other jurisdictions have also considered the adequacy of OSHA's remedies. While we acknowledge that these cases are not binding, they are certainly instructive. See generally *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004). In *Shawcross v Pyro Prod, Inc*, 916 SW2d 342 (Mo App, 1995), the Missouri Court of Appeals concluded that the remedies provided in OSHA are inadequate. Specifically, that Court stated:

> . . . OSHA only allows an employee to file a complaint with the Secretary of Labor who then decides whether to bring an action on the employee's behalf. The employee's right to relief is even further restricted in that the complaint must be filed within thirty days of the discrimination or discharge. The decision to assert a cause of action is in the sole discretion of the Secretary of Labor and the statute affords the employee no appeal if the Secretary declines to file suit. . . . [T]he relief available under OSHA is limited to what the Secretary of Labor deems appropriate. It should also be noted that unless an employee acts immediately and files a complaint with the Secretary of Labor, there is no remedy available without the public policy exception. [*Id.* at 345 (citations omitted).]

The Kansas Supreme Court has also concluded that OSHA does not provide an adequate remedy. *Flenker v Willamette Indus, Inc*, 266 Kan 198, 204; 967 P2d 295 (1998).

In addition to the reasons stated in *Shawcross*, the Kansas Supreme Court noted that the Kansas Secretary of Labor's decision to act on a complaint may be motivated by a wide range of concerns, including budget constraints and political pressure. *Id.* at 206. Furthermore, once an employee files a complaint in Kansas, the employee does not have control over what occurs after. *Id.* at 207. Other courts have agreed that these circumstances render OSHA's remedies inadequate.[9]

We agree with the reasoning in these cases. Particularly, we conclude that the remedies provided in OSHA and MiOSHA are plainly inadequate to provide an employee with sufficient redress. The 30-day limitation, the unfettered discretion granted to the department, and the employee's lack of control over what occurs after a complaint has been filed collectively provide sufficient reason to conclude that the remedies in OSHA and MiOSHA are plainly inadequate. Therefore, the remedies provided are merely cumulative and not exclusive and, accordingly, parties, like plaintiff, challenging their discharge as a matter of public policy are not restricted from doing so under *Dudewicz*.[10]

---

[9] See, e.g., *Schweiss v Chrysler Motors Corp*, 922 F2d 473, 473-474, 476 (CA 8, 1990) (holding that the plaintiff's private cause of action against her employer alleging retaliatory discharge is not preempted by OSHA); *Kulch v Structural Fibers, Inc*, 78 Ohio St 3d 134, 162; 677 NW2d 308 (1997) (holding that "an at-will employee who is discharged or disciplined for filing a complaint with OSHA concerning matters of health and safety in the workplace is entitled to maintain a common-law tort action against the employer for wrongful discharge/discipline in violation of public policy").

[10] The Court of Appeals majority cited *Ohlsen*, 111 Mich App at 583-584, to support its conclusion that the statutory remedies in MiOSHA are exclusive. *Stegall III*, 345 Mich App at 431. However, *Ohlsen* is not binding on the Court of Appeals. It was decided before 1990 and therefore lacks precedential authority. See MCR 7.215(J)(1). Moreover, it is likely that the holding was overruled by *Hottman*. See *Hottmann*, 226 Mich App at 177 ("The MIOSHA does not create new common-law or statutory rights, duties, or

## III. CONCLUSION

This Court previously held that plaintiff's internal report sufficiently alleged a public-policy cause of action. See *Stegall II*, 509 Mich at 1087. Accordingly, the only question on appeal is whether the claim is preempted by OSHA and MiOSHA.

Generally, a cause of action based on a discharge in violation of public policy is predicated on a failure or refusal to violate a law or on the exercise of a right conferred by a well-established legislative enactment. Such a claim may be asserted despite the applicability of a statute that has an antiretaliation provision only where the remedies in the subject statute are cumulative and not exclusive. Here, the remedies provided under OSHA and MiOSHA are inadequate to constitute exclusive remedies that preempt public-policy claims because they fail to provide employees with sufficient redress. Given that the remedies under OSHA and MiOSHA are therefore cumulative, plaintiff's public-policy cause of action is not preempted. We leave it to the trial court in the first instance to consider whether there is a genuine issue of material fact as to plaintiff's claim that he was discharged in violation of public policy.

We reverse the judgment of the Court of Appeals and remand this case to the Oakland Circuit Court for further proceedings not inconsistent with this opinion.

Kyra H. Bolden
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch

---

liabilities of employers and employees."). Notwithstanding, to the extent *Ohlsen* concluded that MiOSHA's remedies are exclusive, it was wrongly decided.

19

STATE OF MICHIGAN

SUPREME COURT

CLEVELAND STEGALL,

      Plaintiff-Appellant,

v                                          No. 165450

RESOURCE TECHNOLOGY
CORPORATION, doing business as
BRIGHTWING, and FCA US, LLC,

      Defendants-Appellees.

_____

ZAHRA, J. (*dissenting*).

The majority opinion errs on two fronts. First, it errs by holding that the antiretaliation provisions of the Occupational Safety and Health Act (OSHA), 29 USC 651 *et seq*., and the Michigan Occupational Safety and Health Act (MiOSHA), MCL 408.1001 *et seq*., do not preempt plaintiff's claims. In *Dudewicz v Norris Schmid, Inc*,[1] this Court clearly held that a public-policy claim is sustainable "only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue." Because both OSHA and MiOSHA contain statutory prohibitions against discharging an employee in retaliation for the employee alerting the state or federal Occupational Safety

---

[1] *Dudewicz v Norris Schmid, Inc*, 443 Mich 68, 80; 503 NW2d 645 (1993), overruled in part on other grounds by *Brown v Detroit Mayor*, 478 Mich 589 (2007).

and Health Administration of a potentially hazardous worksite,[2] plaintiff's public-policy claim is plainly preempted.

Second, the majority opinion errs by holding that plaintiff is not an at-will employee who may be fired for any reason not prohibited by law. In *Suchodolski v Mich Consol Gas Co*,[3] this Court established the general rule that employees working under an at-will employment contract may be fired for any reason, with three limited and narrow exceptions. Plaintiff has not raised a genuine issue of material fact about whether he falls under any of the three exceptions. Accordingly, defendants are entitled to summary disposition of plaintiff's public-policy claim even if that claim is not preempted by state and federal law. I therefore dissent.[4]

## I. ANALYSIS

This is not the first time this matter has been before this Court. Previously, a majority of the Court remanded this case to the Court of Appeals "for further consideration

---

[2] See MCL 408.1011(a) (requiring employers to "[f]urnish to each employee, employment and a place of employment that is free from recognized hazards that are causing, or likely to cause, death or serious physical harm to the employee") and MCL 408.1065(1) (preventing an employer from discharging an employee "because the employee filed a complaint . . . or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act"). See also 29 USC 660(c)(1) (providing that "[n]o person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [OSHA] or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by [OSHA]").

[3] *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 695-696; 316 NW2d 710 (1982).

[4] The majority opinion does not purport to overrule or significantly modify the holdings of *Dudewicz* or *Suchodolski*. Accordingly, I need not defend *Dudewicz* or *Suchodolski* on the merits or explain why they were correctly decided under Michigan law.

2

of whether plaintiff has established a prima facie claim that he was discharged in violation of public policy, whether plaintiff's public-policy claim is nonetheless preempted by either state or federal law, and whether arguments that the claim has been preempted are preserved."[5]  I dissented from the remand order, explaining in detail that "[p]laintiff's public-policy claim fails both because (1) it is preempted by [MiOSHA] and/or [OSHA] and because (2) the public-policy exceptions to at-will employment that plaintiff invokes under [*Suchodolski*] are not applicable."[6]  On remand, the Court of Appeals agreed with my analysis on both counts and held that plaintiff's claim was preempted by OSHA and MiOSHA.[7]  Plaintiff again sought leave to appeal and now asks this Court to consider these issues again.

A majority of this Court accommodates plaintiff's request and reverses the judgment of the Court of Appeals, holding that a plaintiff may assert a claim for termination in violation of public policy even where applicable statutes have antiretaliation provisions. For the reasons thoroughly set forth in my prior dissent, I disagree.

The factual and procedural history described in the majority opinion is accurate, albeit abbreviated.  The majority opinion passes too lightly over a critical fact: that defendant FCA US, LLC, *closed* the auto plant at which plaintiff worked *before* his employment was terminated.  The relevant time line of this case is as follows: (1) in April 2016, plaintiff complained to his supervisors that asbestos insulation threatened second-

---

[5] *Stegall v Resource Technology Corp*, 509 Mich 1086, 1087 (2022).

[6] *Id*. at 1089 (ZAHRA, J., dissenting).

[7] *Stegall v Resource Technology Corp*, 345 Mich App 416, 433; 5 NW3d 378 (2023).

3

shift workers at the Sterling Heights Assembly Plant; (2) in May 2016, FCA announced that it was ending production of the Chrysler 200 sedan (which was manufactured during the second shift at Sterling Heights Assembly Plant); (3) in June 2016, plaintiff's supervisor announced that some of plaintiff's coworkers were going to be transferred to another plant to work on a different project and other workers—to include plaintiff—would be terminated; (4) in July 2016, plaintiff filed a retaliation complaint with the Michigan Occupational Safety and Health Administration, alleging that he was being fired because he complained of a perceived asbestos danger.

In *Dudewicz*, this Court considered "whether the Whistleblowers' Protection Act (WPA) prohibits an employer from discharging an employee who files a criminal complaint against a fellow employee for an assault that arose out of a dispute over the handling of the employer's business, during business hours, and at the site of employment."[8] This Court also considered "whether the public policy exception to the employment at will doctrine applie[d] to the facts of [that] case."[9] We concluded that "the WPA applies and prohibits discharge under these facts" and that "the WPA preempts any public policy claim arising out of the same facts."[10] Relevant to the present case, this Court held:

> In those cases in which Michigan courts have sustained a public policy claim, the statutes involved did not specifically proscribe retaliatory discharge. Where the statutes involved did proscribe such discharges, however, Michigan courts have consistently denied a public policy claim. . . . A public

---

[8] *Dudewicz*, 443 Mich at 70.

[9] *Id.*

[10] *Id.*

policy claim is sustainable, then, only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue.[11]

Because the plaintiff's termination in *Dudewicz* possibly violated the WPA and because the WPA preempted any public-policy claim, this Court affirmed the dismissal of the plaintiff's public-policy claim.

The majority opinion now makes a hash of *Dudewicz*'s simple and straightforward holding. The majority opinion states:

> Read in the proper context, *Dudewicz* limits the "public-policy exception to the at-will employment rule only where a legislative enactment has not only explicitly prohibited the discharge of an employee acting in accordance with a statutory right or duty, but also provided an exclusive remedy for violation of that explicit prohibition." *McNeil* [*v Charlevoix Co*, 484 Mich 69, 90 n 5; 772 NW2d 18 (2009)] (CAVANAGH, J., concurring). In other words, when examining whether a public-policy claim based on alleged retaliatory action by the employer may be asserted, the threshold inquiry is whether the public-policy claim is based on a statute that has an antiretaliation provision. If so, the court must then ask whether the remedies of the underlying statute are exclusive. If deemed exclusive, the public-policy claim is preempted. But if the remedies are cumulative, the public-policy claim may proceed.

But *Dudewicz* has no such holding, and there is no "context" that suggests that a court must resolve public-policy claims under the process fabricated in the majority opinion. Specifically, the majority's test asks (1) whether the public-policy claim is based on a statute that has an antiretaliation provision and (2) whether the remedies of the underlying statute are exclusive. To the contrary, *Dudewicz* plainly held: "A public policy claim is sustainable, then, *only where there also is not an applicable statutory prohibition against*

---

[11] *Id*. at 79-80.

5

*discharge in retaliation* for the conduct at issue."[12] This Court's use of "only" in *Dudewicz* establishes that there is one *and only one* circumstance in which an otherwise properly pleaded public-policy claim may be maintained: when there is not an applicable statutory antiretaliation provision.

A simple application of *Dudewicz* confirms that plaintiff's claim is barred. As explained above, MCL 408.1011(a) requires employers to provide safe work environments to employees, and MCL 408.1065(1) prohibits employers from firing employees for complaining about unsafe work environments. Similarly, 29 USC § 660(c)(1) prevents employers from discharging or discriminating against an employee who complains of unsafe working conditions. Because only plaintiff's OSHA and MiOSHA claims are before the Court and both statutes contain antiretaliation provisions, plaintiff's public-policy claims are preempted.

The majority opinion also errs by reviving a piece of dictum from *Pompey v Gen Motors Corp*.[13] In *Pompey*, this Court stated in dictum that "a statutory remedy is not deemed exclusive if such remedy is plainly inadequate . . . ."[14] *Pompey* provided no analysis for this remarkable contention, merely citing cases from Montana and New York.[15] Since *Pompey*, we have never held that a statutory remedy was inadequate; in fact,

---

[12] *Id*. at 80.

[13] *Pompey v Gen Motors Corp*, 385 Mich 537, 552 n 14; 189 NW2d 243 (1971).

[14] *Id*. at 553 n 14.

[15] See *id*.

6

we have rarely even cited *Pompey*'s questionable dictum, and in *Lash v Traverse City*[16] this Court noted that *Pompey* "appears inconsistent with subsequent caselaw."[17] The majority opinion now "disavow[s]" *Lash*, revives *Pompey*, and holds

> that the remedies provided in OSHA and MiOSHA are plainly inadequate to provide an employee with a sufficient redress. The 30-day limitation, the unfettered discretion granted to the department, and the employee's lack of control over what occurs after a complaint has been filed collectively provide sufficient reason to conclude that the remedies in OSHA and MiOSHA are plainly inadequate.

The majority opinion's application of *Pompey*'s inadequacy standard is demonstrative of why *Pompey* is inconsistent with subsequent caselaw. The majority opinion summarily determines that a remedy created by the federal and state Legislatures is inadequate *merely because it does not resemble the remedy the majority would have crafted*. Indeed, the majority opinion does not measure the adequacy of OSHA and MiOSHAs' remedies against any concrete expression of the Legislature's intent. In short, the majority acts as Legislature-West, overwriting the plain statements from the actual Legislature a few blocks east that OSHA and MiOSHA create exclusive remedies regardless of what the majority may think of the adequacy of those remedies.

Even assuming that plaintiff's public-policy claim is not preempted by MiOSHA or OSHA, it does not survive scrutiny under *Suchodolski*. *Suchodolski* set forth three exceptions to the general rule that employment is generally at-will and terminable by the

---

[16] *Lash v Traverse City*, 479 Mich 180; 735 NW2d 628 (2007).

[17] *Id*. at 192 n 19.

7

employee or employer at any time, for any or no reason at all.[18]  Plaintiff claims that he

falls under either the second or third exception.

The second exception exists where employment has been terminated because of the

employee's failure or refusal to violate the law in the course of employment.[19]  Specifically,

plaintiff claims that his internal complaints about asbestos in his workplace amount to a

refusal to "acquiesce" in *defendants' violations* of workplace-safety laws,[20] which he

argues is the same as "the failure or refusal to violate a law in the course of employment."[21]

I disagree.  It makes no sense to say that plaintiff failed or refused to violate the law by

demanding air-quality tests and personal protective equipment when he thought that there

was asbestos in the workplace.

---

[18] The first exception exists when there are "explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty." *Suchodolski*, 412 Mich at 695.

[19] *Id*.

[20] See 29 CFR 1910.1001(j) (recognizing the occupational risks posed by asbestos fibers); 29 CFR 1910.1001(c)(1) (creating duties for the employer to ensure that no employees are exposed to dangerous asbestos concentrations); 29 CFR 1910.1001(d)(1)(*i*) and (d)(5) (creating an employer duty to monitor air quality); 29 CFR 1910.1001(d)(7)(*i*) (creating an employer duty to share the results of those tests with employees); 29 CFR 1910.1001(b), 29 CFR 1910.1001(e)(4), and 29 CFR 1910.134(a)(2) (creating an employer duty to provide protective equipment to employees if they will come in contact with dangerous concentrations of asbestos); MCL 408.1011 ("An employer shall: (a) Furnish to each employee, employment and a place of employment that is free from recognized hazards that are causing, or are likely to cause, death or serious physical harm to the employee."). See also *Whirlpool Corp v Marshall*, 445 US 1, 11-12; 100 S Ct 883; 63 L Ed 2d 154 (1980) (recognizing that OSHA was passed with the intention of deterring the occurrence of occupational deaths and serious injuries).

[21] *Suchodolski*, 412 Mich at 695.

The relevant laws impose a duty on *an employer* to provide an asbestos-free work environment.[22] When plaintiff made his various demands, he was not failing or refusing to violate the law, because the law does not place any duty or burden on him to do, or refrain from doing, anything. What the law does do, however, is grant him the right to a safe and hazard-free workplace. In sum, plaintiff has not made a claim under the second *Suchodolski* exception. By raising questions about workplace safety and being reticent to work in certain areas of the plant without air-quality tests, an inspection, and personal protective equipment, it cannot fairly be said that plaintiff himself *failed or refused to violate the law*, which is directed, in terms of duties, at his *employer—not* him, an employee. Indeed, the three cases that the *Suchodolski* Court cited when it laid out this second exception show that "acquiescence" of this sort is not what the second exception is supposed to cover.[23]

Plaintiff fares no better under the third *Suchodolski* exception. The third exception applies where the alleged reason for termination was the employee's exercise of a right conferred by a well-established legislative enactment.[24] Plaintiff exercised his right to an

---

[22] See 29 CFR 1910.1001(c)(1); MCL 408.1009; MCL 408.1011(a).

[23] *Trombetta v Detroit, T & I R Co*, 81 Mich App 489; 265 NW2d 385 (1978) (discharge for refusing to falsify pollution control reports that were required to be filed with the state); *Petermann v Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 396*, 174 Cal App 2d 184, 344 P2d 25 (1959) (discharge because employee refused to give false testimony before legislative committee); *McNulty v Borden, Inc*, 474 F Supp 1111 (ED Pa, 1979) (discharge for refusal to participate in illegal price-fixing scheme). Each of those cases involved a plaintiff who failed or refused to violate the law, which had imposed a duty on him. That is not this case.

[24] *Suchodolski*, 412 Mich at 695-696.

asbestos-free workplace that is conferred by both federal regulations[25] and Michigan law[26] when he asked for air-quality testing, an inspection, and personal protective equipment. But this does not end the inquiry. This Court has adopted the *McDonnell Douglas Corp v Green*[27] framework when analyzing wrongful-termination claims.[28] Under the *McDonnell Douglas* framework, a plaintiff who claims to have been discharged by a defendant in retaliation for the plaintiff's conduct must establish a prima facie case for unlawful, retaliatory discharge.[29] If a plaintiff makes his or her case, the defendant may rebut the

---

[25] See 29 CFR 1910.1001(j) (recognizing the occupational risks posed by airborne asbestos fibers); 29 CFR 1910.1001(c)(1) (creating duties for the employer to ensure that no employees are exposed to dangerous asbestos concentrations); 29 CFR 1910.1001(d)(1)(*i*) and (d)(5) (creating an employer duty to monitor air quality); 29 CFR 1910.1001(d)(7)(*i*) (creating an employer duty to share the results of those tests with employees); 29 CFR 1910.1001(b), 29 CFR 1910.1001(e)(4), and 29 CFR 134(b) (creating an employer duty to provide protective equipment to employees if they will come in contact with dangerous concentrations of asbestos);

[26] MCL 408.1009 ("The safety, health, and general welfare of employees are primary public concerns. The legislature hereby declares that all employees shall be provided safe and healthful work environments free of recognized hazards."); MCL 408.1011(a) ("An employer shall: (a) Furnish to each employee, employment and a place of employment that is free from recognized hazards that are causing, or are likely to cause, death or serious physical harm to the employee."); MCL 408.1065(1) (preventing the discharge of an employee "because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act").

[27] *McDonnell Douglas Corp v Green*, 411 US 792, 802-804; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

[28] See *Hazle v Ford Motor Co*, 464 Mich 456, 459; 628 NW2d 515 (2001) ("In order to avoid summary disposition, the plaintiff must then proceed through the familiar steps set forth in *McDonnell Douglas*[.]").

[29] See *McDonnell Douglas*, 411 US at 807.

plaintiff's case by showing a legitimate, nonretaliatory reason for the discharge.[30]  If the defendant succeeds in rebutting the plaintiff's prima facie case of retaliation, then the burden shifts back to the plaintiff to show that the defendant's proffered reason was a mere pretext for unlawful conduct.[31]

Plaintiff fails to establish a colorable application of the third exception.  As a preliminary matter, it is undisputed that plaintiff's supervisor forwarded plaintiff's concerns regarding asbestos to the plant's health and safety manager, who visually inspected the area before sending photographs to an asbestos specialist, who assured the manager that there was no asbestos hazard.  On top of that, the Michigan Occupational Safety and Health Administration investigated plaintiff's complaint and determined that there were no violations at the plant—i.e., no asbestos.  In sum, according to plaintiff's employer, an outside asbestos specialist, and the Michigan Occupational Safety and Health Administration, there was, in fact, no asbestos in the plant.  None.

Nonetheless, plaintiff's claim can advance down the *McDonnell Douglas* burden-shifting framework if plaintiff can show a prima facie case of unlawful retaliation for exercising his right to an asbestos-free workplace (when in fact there was no asbestos there at all).  Accepting plaintiff's claim that he was retaliated against notwithstanding the fact that his concerns of an unsafe workplace were unfounded, the burden shifts back to

---

[30] See *id*.

[31] See *Debano-Griffin v Lake Co*, 493 Mich 167, 176; 828 NW 2d 634 (2013) (adopting and applying the *McDonnell Douglas* burden-shifting framework and concluding that "a plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful retaliation]") (citation omitted; alterations in original).

defendant FCA to show that it had a legitimate, nonretaliatory reason to terminate plaintiff's employment. FCA easily makes this showing. FCA terminated plaintiff's employment when the plant at which plaintiff worked was shut down because FCA ceased production of the Chrysler 200, the car on which plaintiff was hired to work. Plaintiff's argument that he was fired for reporting FCA's factory to the state and federal Occupational Safety and Health Administrations only makes sense if FCA was willing to close an entire factory and end production of one of its car lines merely to provide cover for its true goal of retaliating against plaintiff. For plaintiff to fall under the third exception, a fact-finder would have to believe that FCA shut down production of the Chrysler 200 and closed an entire factory, thereby displacing hundreds of employees, merely to create a pretext to fire him. Put simply, plaintiff's argument that he was fired to retaliate for his workplace-safety complaints stretches credulity and does not create a question of fact requiring resolution by a fact-finder.

All told, plaintiff did not satisfy *Suchodolski*'s second or third exceptions, so the general rule that an at-will employment contract may be terminated by either the employer or the employee at any time applies. Accordingly, plaintiff has not alleged a genuine issue of material fact, and the trial court properly granted summary disposition to defendants.[32]

---

[32] Plaintiff's public-policy claim against both Resource Technology Corporation (RTC) and FCA is preempted, and both defendants are entitled to summary disposition on the pleaded facts. In Count Two of his complaint, plaintiff alleged that RTC and FCA terminated his employment in violation of public policy after he filed a report in the Michigan Occupational Safety and Health Administration about the working conditions in FCA's factory. Because plaintiff's public-policy claim against RTC and FCA is premised on the same report and the same protective statute, the claim is equally preempted or not preempted as to both defendants. Consequently, there is no reason—for this dissent's purposes—to distinguish between the two defendants. Likewise, the merits of both claims

## II. CONCLUSION

The majority opinion errs by reversing the judgment of the Court of Appeals. I would affirm the Court of Appeals for two reasons. First, as established in *Dudewicz*, plaintiff's public-policy claim is preempted by federal and state law. Plaintiff may not bring a public-policy claim for retaliatory termination when the underlying, applicable federal and state laws contain antiretaliation provisions. Second, plaintiff has utterly failed to establish that he falls within one of the narrow exceptions to *Suchodolski*. Accordingly, plaintiff was properly terminated from employment as an at-will employee. For these reasons, and for the reasons expressed in my prior dissent on this same issue,[33] I conclude that the majority opinion errs by breathing life into plaintiff's preempted and otherwise meritless claims. Accordingly, I dissent.

Brian K. Zahra
Elizabeth T. Clement
David F. Viviano

---

are intertwined. In his complaint, plaintiff packaged FCA and RTC's conduct together as one singular violation of public policy. Plaintiff alleged that RTC conducted a background check on him at FCA's behest so that FCA could find a pretext to fire him. But that theory only works if FCA shut down its factory and stopped producing Chrysler 200s merely to get back at plaintiff, thereby requiring RTC to find a pretext to fire plaintiff. Thus, the merits of plaintiff's claim against FCA and RTC are inextricable, and there is no reason, for this dissent's purposes, to disentangle the defendants' actions.

[33] *Stegall*, 509 Mich at 1089 (ZAHRA, J., dissenting).

13